IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DOUGLAS BIEDA, | ) |
| Plaintiff, | ) Civil Action No. 19-967 |
| | ) Magistrate Judge Maureen P. Kelly |
| v. | ) |
| | ) Re: ECF No. 58 |
| CNH INDUSTRIAL AMERICA LLC, and | ) |
| LAMB & WEBSTER, INC., | ) |
| Defendants. | ) |

**<u>OPINION</u>**

Plaintiff Douglas Bieda ("Bieda") initiated this action against Defendant CNH Industrial America LLC ("CNH") and Lamb & Webster, Inc., ("L&W"), alleging claims arising out of his purchase of a defective CNH crop planter.[1]

Presently before the Court is a Motion for Summary Judgment filed on behalf of CNH, ECF No. 58, seeking judgment in its favor as to Bieda's claim for breach of the implied warranty of merchantability. For the following reasons, the Motion for Summary Judgment will be denied.[2]

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

Resolution of the CNH's Motion for Summary Judgment and consideration of the arguments of the parties requires review of the evidence of record. The following material facts are undisputed unless otherwise noted.[3]

---

[1] Bieda initially filed this action against L&W and Case New Holland Industrial, Inc. ECF No. 1-1. The parties subsequently stipulated that CNH Industrial America LLC is the proper manufacturer-defendant. ECF Nos. 19-20.

[2] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to a United States Magistrate Judge conducting all proceedings in this case, including the entry of a final judgment. ECF Nos. 11, 12.

[3] The facts are taken from the evidence of record that is either undisputed as indicated by the parties in the Joint Statement of Undisputed Facts, ECF No. 55, or not fairly disputed on the record.

Bieda and his wife own and operate Lonestar Farms in Indiana County, Pennsylvania. ECF No. 55-2 at 8-9. In January 2018, Bieda purchased a CNH 2018 Case IH 2150 12 Row 30 Planter (the "Planter") with optional attachments, including a hydraulic down force attachment, a hydraulic wing down force attachment, and a 22 gpm PTO pump. These items were purchased from L&W, a CNH dealer, for $168,000. ECF Nos. 55 ¶ 1, 55-1. Bieda chose the CNH Planter to use with a CNH tractor already in his possession. The Planter was delivered to Bieda's farm on April 17, 2018, and it did not appear to be missing any readily identifiable items that had been ordered.

Bieda set up the Planter himself. On May 7 and 9, 2018, an L&W technician visited Bieda's farm to confirm the set up was proper and to calibrate the Planter, as agreed in the sales contract. At the time of sale and when this work was performed, L&W's technician was not aware that in 2016, CNH determined that the 22 gpm PTO Pump could not provide sufficient hydraulic pressure to operate the Planter correctly. To remedy this defect, CNH developed a PTO Auxiliary Hydraulic Completing Kit (the "Hydraulic Completing Kit") to plumb the DeltaForce system directly to the tractor's hydraulics. Id. at 3-4; and see ECF Nos. 63-2, 63-3. It is undisputed that CNH did not incorporate or supply this required additional equipment with Bieda's Planter at the time of delivery.

After calibration was completed on May 9, L&W's representative left Bieda's farm. Shortly thereafter, Bieda attempted to operate the Planter, but received an error code indicating the Planter's attachments were not receiving necessary hydraulic pressure. Id. Bieda contacted L&W several times and was instructed to take various steps to resolve the issue, but each failed. On May 30, L&W's technician returned to the farm to diagnose the malfunction. Id., and see ECF No. 55-2 at 198-99. The technician located a Knowledge Article that CNH published in its dealer

database on January 31, 2018. The article explained the defect with the hydraulic system and the need for the Hydraulic Completing Kit to permit proper operation. The evidence is undisputed that CNH failed to take steps to separately advise dealers (or purchasers) of the malfunction or the need to add a Hydraulic Completing Kit with each Planter sale. ECF No. 1 ¶ 17-18.

L&W ordered the Hydraulic Completing Kit on May 31, 2018. However, Bieda did not receive the kit until July 2. By that time, Bieda's 2018 planting season had been completed. ECF No. 55 at 4. Bieda alleges that because of the inoperable Planter, his 2018 corn crop was not planted at a sufficient depth. He estimates that he suffered $250,000 in crop yield losses. ECF No. 1-1 ¶¶ 15-19.

By letter dated January 4, 2019, Bieda's counsel notified L&W and CNH of his crop loss claim as well as implied warranty claims related to the CNH's sale and delivery of a malfunctioning Planter. ECF No. 55-10. Prior to sending this letter, Bieda concedes he did not contact CNH directly to submit a warranty claim or to report the malfunction, choosing instead to communicate with L&W as CNH's authorized dealer. ECF No. 55 at 5. Because the 2018 planting season was over, L&W's technician installed the Hydraulic Completing Kit on January 22, 2019 in preparation for the 2019 season. Following installation, Bieda did not experience any further issues with the Planter's hydraulic pressure or DeltaForce system. Id.

At the beginning of the 2019 crop season and after planting 186 acres of corn, Bieda noticed that the fourth row of the Planter was dragging in the field and not operating properly. Id. at 5-6. Bieda identified the cause of the dragging as a bad bearing on the seed disk, which he replaced. Bieda also discovered that some parts to the control linkage of the fourth row of the planter were missing. Bieda replaced the missing parts and continued his planting for the 2019 season. Id.

Bieda alleges that these missing parts resulted in partial planting at an insufficient depth, and additional crop yield losses. ECF No. 1-1 ¶¶ 22-24.

Bieda commenced this action in the Court of Common Pleas of Indiana County, Pennsylvania, asserting claims for breach of implied warranties of merchantability and fitness for a particular purpose, and for breach of contract. ECF No. 1-1. CNH removed the lawsuit to this Court pursuant to 28 U.S.C. § 1441(b), based on diversity jurisdiction. ECF No. 1 ¶¶ 7-9. L&W filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, raising disclaimers for breach of implied warranty claims set forth in the relevant sales documents. ECF No. 7 at 6. The Court agreed that as to L&W, the disclaimers were valid and so dismissed Bieda's implied warranty claims against L&W. ECF No. 16. L&W and Bieda subsequently resolved Bieda's breach of contract claim against L&W. ECF Nos. 65-66.

Bieda's remaining claim is asserted against CNH for breach of the implied warranty of merchantability (Count I). ECF No. 1-1 at 8. CNH contends that it is entitled to summary judgment in its favor as a matter of law for two reasons: first, because under applicable Pennsylvania law, CNH validly and conspicuously disclaimed all implied warranties in its sales documents and, second, because Bieda failed to provide notice to CNH of his "issues with the equipment" as required by 13 Pa. C.S. § 2607(c)(1). ECF Nos. 59, 60.

In his Brief in Opposition, Bieda responds that CNH misrepresented the condition of the Planter at the time of sale and knowingly sold defective equipment. Bieda contends that this conduct renders any disclaimer of implied warranties unconscionable and void. ECF No. 63. Bieda also argues that his complaints to L&W satisfy any statutory notice requirement, based on L&W's status as CNH's authorized sales agent. Id.

In reply, CNH contends that any claim for negligent misrepresentation by CNH regarding the condition of the Planter is barred by the parol evidence rule and the applicable statute of limitations and is otherwise irrelevant given the clear exclusion of implied warranties. CNH further responds that notice to L&W is not sufficient to provide notice to CNH, given the disclaimer of an agency relationship in the relevant CNH-L&W dealer agreement. ECF No. 64. The Motion for Summary Judgment is now ripe for consideration.

## II.    STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that: "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of material fact is in genuine dispute if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Doe v. Abington Friends Sch., 480 F.3d 252, 256 (3d Cir. 2007) ("A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof"). Thus, summary judgment is warranted where, "after adequate time for discovery and upon motion ... a party ... fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Marten v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

The moving party bears the initial burden of demonstrating to the court that there is an absence of evidence to support the non-moving party's case. Celotex, 477 U.S. at 322; see also Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004). "[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply

show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)) (internal quotations omitted).

In deciding a summary judgment motion, a court must view the facts in the light most favorable to the nonmoving party and must draw all reasonable inferences and resolve all doubts in favor of the nonmoving party. Matreale v. N.J. Dep't of Military & Veterans Affairs, 487 F.3d 150, 152 (3d Cir. 2007); Woodside v. Sch. Dist. of Phila. Bd. of Educ., 248 F.3d 129, 130 (3d Cir. 2001).

### III. DISCUSSION

#### 1. Unconscionability of Disclaimer of Implied Warranties

The parties agree that Pennsylvania law applies to Bieda's breach of warranty claims. The Pennsylvania Uniform Commercial Code defines "implied warranty of merchantability" as "a warranty that the goods shall … "pass without objection in the trade," … and "are fit for the ordinary purpose for which such goods are used." 13 Pa. C.S. § 2314. As such, Pennsylvania law implies a warranty of merchantability "to protect buyers from loss where the goods purchased are below commercial standards or are unfit for the buyer's purpose." Altronics of Bethlehem, Inc. v. Repco, Inc., 957 F.2d 1102, 1105 (3d Cir. 1992).

To establish a breach of an implied warranty of merchantability, Bieda must prove that "(1) that the product malfunctioned; (2) [he] used the product as intended or reasonably expected by the manufacturer; and (3) the absence of other reasonable secondary causes." Id. at 1105. Pursuant to Section 2316, implied warranties may be excluded from the relevant sale as follows:

> (b) Implied warranties of merchantability and fitness. — Subject to subsection (c), to exclude or modify the implied warranty of merchantability or any part of it the

6

language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

(c) Implied warranties in general. — Notwithstanding subsection (b):

(1) Unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like "as is," "with all faults" or other language which in common understanding calls the attention of the buyer to the exclusion of warranties and makes plain that there is no implied warranty.

(2) When the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him.

(3) An implied warranty can also be excluded or modified by course of dealing or course of performance or usage of trade.

13 Pa. C.S. § 2316. CNH points to disclaimers appearing on the L&W Purchase Order and the CNH Retail Installment Sale Contract and contends that this Court's prior determination as to their validity is the law of the case and precludes Bieda's claim against it for breach of implied warranty of merchantability.

The L&W Purchase Order states the Planter is sold new "with Case IH New manufacturer warranty" and,

> OTHER THAN THE WARRANTY OR MANUFACTURER'S WARRANTY REFERRED TO ABOVE, IF EITHER IS APPLICABLE, THERE ARE NO OTHER WARRANTIES MADE BY DEALERS OR ITS REPRESENTATIVE, EXPRESS OR IMPLIED, OR TO MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE….

ECF No. 6-1 at 1.

The accompanying CNH Retail Installment Sale Contract, also executed by Bieda at the time of sale, provides in bold upper-case letters at paragraph one as follows:

NO WARRANTY.  THE EQUIPMENT IS SOLD AS IS AND WITH ALL FAULTS, SUBJECT TO ANY APPLICABLE MANUFACTURER'S EXPRESS, WRITTEN WARRANTY. NEITHER SELLER NOR MANUFACTURER MAKE ANY OTHER REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AND SPECIFICALLY DISCLAIM THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. NEITHER SELLER NOR MANUFACTURER WILL BE LIABLE FOR ANY SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES RESULTING FROM A BREACH OF THE EXPRESS WARRANTY OR ANY IMPLIED WARRANTY IMPOSED BY LAW.

ECF No. 6-2 at 2.

As indicated, this Court previously determined that Bieda received both disclaimers at the time of purchase, that each is conspicuous and, as to L&W, that the disclaimers precluded breach of implied warranty claims.  See Bieda v. Case New Holland Indus., Inc., No. CV 19-967, 2019 WL 4888895, at *5 (W.D. Pa. Oct. 3, 2019) (citing Axalta Coating Systems, LLC v. Midwest II, Inc., 217 F. Supp. 3d 813, 819 & n. 45 (E.D. Pa. 2016) (conspicuous disclaimers of implied warranties of merchantability and fitness for a particular purpose are enforceable under Pennsylvania law); Allen-Myland, Inc. v. Garmin Intern., Inc. 140 A.3d 677, 684-688 (Pa. Super. Ct. 2016) (issue of fact is presented as to whether disclaimer is part of the parties' bargain when disclaimer is not provided to purchaser until subsequent delivery of product); Borden, Inc. v. Advent Ink Co., 701 A.2d 255, 259 (Pa. Super. Ct. 1997) (where exclusion of warranties of merchantability or fitness for a particular purpose appear in writing, the question to be resolved is whether the exclusion is conspicuous)).

Bieda argues that pursuant to 13 Pa. C.S. § 2302(a), the disclaimer does not bar his implied warranty claim because CNH, as the manufacturer of the Planter, knowingly placed a defective product into the stream of commerce and such conduct renders the disclaimers void as unconscionable.

> Under Pennsylvania law, a court may decline to enforce a contract clause "[i]f the court as a matter of law finds" that the clause was "unconscionable at the time it was made." To prove a contract clause was unconscionable, a plaintiff must show that the clause was both procedurally and substantively unconscionable. "In examining these two prongs, the Pennsylvania Supreme Court has indicated that it might be appropriate to use a 'sliding-scale approach' so that 'where the procedural unconscionability is very high, a lesser degree of substantive unconscionability may be required' and presumably, vice-versa."

Harbison v. Louisiana-Pacific Corp., 602 F. App'x 884, 886-87 (3d Cir. 2015) (citing 13 Pa. C.S. § 2302(a); Quilloin v. Tenet HealthSystem Phila., Inc., 673 F.3d 221, 230 (3d Cir. 2012); and citing Salley v. Option One Mortg. Corp., 925 A.2d 115, 125 n. 12 (Pa. 2007)).

The United States Court of Appeals for the Third Circuit has explained that "[p]rocedural unconscionability pertains to the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language." Harris v. Green Tree Financial Corp., 183 F. 3d 173, 181 (3d Cir. 1999). "This type of unconscionability involves, for example, 'material, risk-shifting' contractual terms which 'are not typically expected by the party who is being asked to assent to them' and 'often appear [] in the boilerplate of a printed form.'" Id. (quoting Germantown Mfg. Co. v. Rawlinson, 491 A.2d 138, 145-46 (Pa. Super. Ct. 1985)).

"Substantive unconscionability refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent. Thus, '[u]nconscionability requires a two-fold determination: that the contractual terms are unreasonably favorable to the drafter and there is no meaningful choice on the part of the other party regarding acceptance of the provisions.'" Harris, 183 F. 3d at 181(internal citations omitted).

"The burden of proof generally concerning both elements has been allocated to the party challenging the agreement, and the ultimate determination of unconscionability is for the courts."

9

Salley v. Option One Mortg. Corp., 925 A.2d at 119–20 (citing Bishop v. Washington, 480 A.2d 1088, 1094 (Pa. Super. Ct. 1984), and citing, 13 Pa. C.S. § 2302).

### a. Procedural Unconscionability

Bieda argues that CNH's failure to disclose "the known incompatibility with the Equipment" prevented him from an "equitable evaluation of risk evaluation," and requires a finding that the disclaimer suffers procedural unconscionability. ECF No. 63 at 9. Upon a review of the evidence of record and the factors upon which meaningful choice is measured, the Court agrees.

Contracts of adhesion, such as the warranty included with CNH's Planter, "are generally considered to satisfy the procedural unconscionability requirement," Harbison, 602 F. App'x at 886–87, but are not presumptively unconscionable or unenforceable. Salley, 925 A.2d at 127. Rather, "[a] more searching inquiry of the parties' respective bargaining positions, level of sophisticiation [sic], and opportunity to review an [] agreement are all relevant considerations in determining whether the process was unfair." Bush v. Comcast Cable Commc's Mgmt., LLC, No. 2:19-CV-01004, 2020 WL 4199077, at *7-8 (W.D. Pa. July 22, 2020) (citing Seus v. John Nuveen & Co., 146 F.3d 175, 184 (3d Cir. 1998) (*overruled on other grounds*, Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S. 79 (2000)) (where an arbitration agreement does not impose an undue burden or limit statutory rights, "[u]nequal bargaining power is not alone enough to make an agreement to arbitrate a contract of adhesion.")).

In this case, the prescribed inquiry reveals several factors favoring a finding of fairness; however, these factors fail to overcome the inherent and substantial disparity in bargaining position resulting from CNH's knowledge at the time of sale that its Planter was defective and would not function as intended and reasonably expected by any purchaser.

10

Evidence in favor of fairness includes the obvious disclaimer set forth in the CNH Retail Installment Sale Contract in bold upper-case letters at paragraph one of the "Agreement Provisions." Bieda is a relatively experienced businessman and had an opportunity to review the agreement before the sale. He operates a commercial farm, is a part-owner in a small real estate and recycling business, and for some time served as a farm equipment dealer for a different manufacturer. ECF No. 55-2 at 10-16, 60-62. In this role, Bieda processed and resolved warranty claims. Id. Bieda's understanding of contracts and warranties therefore lessens the likelihood of surprise as to meaning of the disclaimer.

In addition, there is no evidence that CNH was the only planter manufacturer, or that Bieda was prevented from considering comparable planters with different warranties, or even that he sought to negotiate CNH's disclaimer in the financing process. See, e.g., Jordan v. Four Winds Int'l, Inc., No. 1:08-cv-129, 2010 WL 1337691, at *13 (W.D. Pa. Mar. 31, 2010)(disclaimer of implied warranties in sale of Recreational Vehicle to unsophisticated purchaser not unconscionable because term was sufficiently conspicuous, is typical in vehicle sales, plaintiff participated in purchase of other vehicles, and there was no evidence as to the lack of meaningful choice in supplier); Vullings v. Bryant Heating & Cooling Sys., No. 18-cv-3317, 2019 WL 687881 *4 (E.D. Pa. Feb. 19, 2019) (citing Quilloin, 673 F.3d at 235, district court granted motion to dismiss where plaintiff failed to allege facts regarding lack of meaningful choice in home furnace supplier or conduct preventing comparison of comparable products with different warranties); cf. Al's Auto Inc. v. Hollander Inc., No. 08-cv-31, 2010 WL 3855251, at *6 (E.D. Pa. Oct. 1, 2010) (plaintiff alleged that it had no choice but to upgrade to a newer version of the defendant's software because its business was dependent on the prior version which it had used for nearly twenty years and which the defendant ceased supporting after new version was released).

That said, in limited circumstances, courts have recognized that a manufacturer's knowledge of an inherent defect at the time of sale gives rise to a substantial disparity in bargaining power sufficient to render limiting contract terms unconscionable.

In Carlson v. Gen. Motors Corp., 883 F.2d 287 (4th Cir. 1989), *cert. denied*, 495 U.S. 904 (1990), plaintiff automobile buyers brought an action against the seller asserting breach of implied warranty claims and alleging that the breach constituted a violation of the Magnuson–Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq*. The court's analysis of the implied warranty claim, while applied to the MMWA's consumer protection claim, was conducted pursuant to traditional Uniform Commercial Code provisions and is instructive here.

In the complaint, plaintiffs alleged that prior to the sales at issue, GM knew of inherent defects in its diesel engine but failed to warn its customers of the likelihood of "catastrophic failures." GM raised a durational disclaimer of implied warranties in its form sales contract and argued that "knowledge" of various defects has no bearing on the "reasonableness" of its warranty disclaimers. The United States Court of Appeals for the Fourth Circuit agreed that if the measure for unconscionability rests solely upon "reasonableness," then a durational limitation to implied warranties would not be invalidated by a manufacturer's knowledge that a part may fail at some future point because a customer should reasonably expect a diesel engine supplied by any manufacturer to operate "without incident" for a given period of time. Id. at 295. However, the Fourth Circuit found that unconscionability will implicate the fundamental fairness of the bargaining process.

> [W]hen presented with a claim that the inclusion of certain contractual terms constituted unconscionable "overreaching," courts typically look to the parties' relative "bargaining power," "sophistication," "knowledge" and "expertise"—all of which constitute relevant evidence of whether their ultimate transaction was indeed tainted by an "absence of meaningful choice." Surveying the cases, one noted treatise observes that "judicial finding[s] of lack of 'meaningful choice' ...

> [are] usually founded upon a recipe consisting of one or more parts of assumed consumer ignorance and several parts of seller's guile"; and it is at this level that courts have necessarily cast "unconscionability" in largely *subjective* terms. J. White & R. Summers, Uniform Commercial Code § 4–3, at 187 (3d ed.1988). Relevant in any such case are specific allegations that a seller abused his "superior knowledge" and the buyer's relative ignorance, or that the seller's actions were in some other way akin to "fraud or duress in contract formation"—the claim of course being that such behavior implicates the seller's subjective good faith, the "evenhandedness" of the bargaining process, and thus the "conscionability" of challenged contractual language. See id. at 186.

Id. at 295–96 (internal case citations omitted). Therefore, unconscionability includes "the procedural abuse of unfair surprise, usually manifested as a concealment of important facts." Id. at 296.

The Fourth Circuit concluded that "proof that GM knew of and failed to disclose major, inherent product defects would obviously suggest that its imposition of the challenged 'durational limitations' on implied warranties constituted 'overreaching,' and that the disclaimers themselves were therefore 'unconscionable.'" Id. In such instances, "'there is perforce a substantial disparity in the parties' relative bargaining power,' giving rise to a presumption that the buyer's acceptance of any warranty disclaimers 'was neither "knowing"' nor "'voluntary'"; thereby rendering such limitations unconscionable and ineffective." Id. (quoting Martin v. Joseph Harris Co., 767 F.2d 296, 301-02 (6th Cir. 1985) (*overruled on other grounds as recognized in* Andersons, Inc. v. Horton Farms, Inc., 166 F.3d 308, 324 n.26 (6th Cir. 1998) ("In [Martin], we held unconscionable a disclaimer of warranty and limitation of liability clause in a sales contract between a farmer and a national seed producer…. Therein, we relied in part on the disparity in relative strength and the national producer's failure to inform the farmer that the clause altered significant statutory rights. However, in addition to giving 'considerable weight' to the district court's opinion that Michigan law would not permit the disclaimer to be enforced (something which we no longer do, see In re Grand Jury (Doe) v. United States, 932 F.2d 481, 487 (6th Cir.1991)), we made clear that we were

relying on the unique facts of the case: the producer discontinued a seed treatment procedure that it had been using for 26 years to prevent a crop disease called 'black leg.' The sole notice of the change was provided in the corner of one page in a catalog. A significant portion of the farmer's crop was destroyed by the disease. In reaching our decision, we noted that the defect was latent, that the seed producer could have prevented it, and that the farmers had no control over it.")

The district court in Osness v. Lasko Prods., Inc., 868 F. Supp. 2d 402, 411-12 (E.D. Pa. 2012), applied Carlson and "assum[ed] (without deciding)" that presale knowledge of a defect alone is sufficient to state a claim of unconscionability. However, upon review of the plaintiff's complaint, the district court granted the defendant's motion to dismiss based upon a durational warranty limit because the plaintiff failed to plead facts establishing unconscionability. "[P]laintiff has not sufficiently pleaded that Lasko knew of the alleged defect when it sold the fan at issue here. Plaintiff's complaint does not specify when or how Lasko allegedly learned of the defect; nor does it specify when she purchased a fan. In short, beyond her conclusory allegation that Lasko knew of the defect when it sold the fans, plaintiff has alleged no facts that would support an inference that Lasko knew of the defect when she purchased her fan." Id.

In the instant case, the parties do not dispute that prior to Bieda's purchase, CNH knew of a fundamental flaw in the Planter's hydraulic system that would prevent it from operating as intended. Despite this knowledge, CNH failed to incorporate the parts necessary for the Planter to be used as intended and as marketed at the time of sale and, more importantly, failed to disclose that information to the dealer and the ultimate purchaser. These circumstances contrast with those where courts employed an analysis similar to Carlson but rejected claims of unconscionability due to the absence of evidence or factual allegations regarding the timing of a manufacturer's knowledge of a defect. See, e.g. Vullings, 2019 WL 687881, at *3 (durational limit on warranty

was not unconscionable where plaintiff alleged unspecified complaints from customers and contractors but did not allege that the complaints were made before she purchased furnace); Axalta Coating Sys., LLC. v. Midwest II, Inc., 217 F. Supp. 3d at 819-20 (unsupported allegations of manufacturer's knowledge that its products were defective were not enough to render a straightforward disclaimer unconscionable); *but cf.*, Al's Auto, 2010 WL 3855251, at *7 (software developer's motion for summary judgment raising disclaimer of implied warranties was denied where there were genuine issues of fact as to defendant's knowledge that its product was defective prior to sale, and whether such knowledge was sufficient to find disclaimer unconscionable as a matter of law).

Given undisputed evidence that CNH knew its Planter was defective and not merchantable for its intended purpose in 2016, over two years prior to Bieda's purchase of the Planter in 2018, and the absence of any remedy at law if the disclaimer at issue is given effect, the evidence permits a finding that the disclaimer, as applied to the subject transaction, is procedurally unconscionable as a matter of law.

b. **Substantive Unconscionability**

As to substantive unconscionability, Bieda argues that "blanket disclaimers … meet the standard of being grossly favorable to CNH in this matter." ECF No. 63 at 9-10. The Court finds merit in this argument in light of CNH's presale knowledge of the defective Planter and the absence of a remedy. Al's Auto, 2010 WL 3855251, at *7 (contract terms unreasonably favor software supplier where Beta testing revealed significant problems that were not corrected before sale); and see, WEL Companies, Inc. v. Haldex Brake Products Co., 467 F. Supp. 3d 545, 565-568 (S.D. Ohio 2020) (district court held that under Ohio law, defendant's presale knowledge of brake defects in defendant's control rendered disclaimer and limitation of damages substantively and

15

procedurally unconscionable). In this case, CNH was aware of a defect in its control in the Planter in 2016, two years prior to the sale to Bieda, but failed to disclose this information to any buyer.

CNH cites Streiner v. Baker Residential of Pa., LLC, No. 1253 EDA 2015, 2016 WL 3198162 (Pa. Super. Ct. June 9, 2016), for the proposition that its disclaimer is not unconscionable merely because the terms are favorable to it as the seller/drafter of the contract. ECF No. 64 at 4-5. However, in an unpublished opinion, the Pennsylvania Superior Court panel concluded that the terms of the express warranty at issue in that particular case were not unconscionable because the agreement separately "afforded [plaintiff] substantive protections against various malfunctions and defects to her home over the course of ten years," and so was not "unreasonably favorable" to the seller. Id., 2016 WL 3198162, at *4. CNH presents no evidence of similar provisions in its sale documents protecting Bieda from defects in the Planter that CNH knew existed at the time of sale and that could result in the potential loss of a full planting season. Instead, giving effect to the disclaimer would leave Bieda entirely without a remedy. Therefore, because the undisputed facts establish that the disclaimer of implied warranties unreasonably favors CNH, the disclaimer is substantively unconscionable.

Based on the Court's findings that the disclaimer at issue is procedurally and substantively unconscionable, the Motion for Summary Judgment on behalf of CNH based on the terms of the disclaimer is denied.

**2. Notice**

CNH alternatively argues that Bieda is barred from recovery on any breach of warranty theory due to his failure to provide CNH notice of his alleged issues, thereby denying CNH the opportunity to address his concerns. ECF No. 60 at 10-11 (citing 13 Pa. C.S. § 2607(c)(1) ("the buyer must within a reasonable time after he discovers or should have discovered any breach notify

16

the seller of breach or be barred from any remedy")). Bieda responds that under the terms of the sales and service agreement between CNH and L&W, his notice to L&W satisfies any pre-suit statutory obligation due to L&W's status as CNH's authorized dealer. ECF No. 63 at 8-9; ECF No. 63-1. CNH counters that the express terms of the sales and service agreement preclude a finding of agency relationship between the two entities "for any purpose whatsoever." See ECF No. 64 at 6; see also ECF No. 63-1 § 32.5.

Based upon the evidence of record, the Court is unable to conclude as a matter of law that Bieda breached the obligation to provide reasonable notice to CNH. First, while the agreement between CNH and L&W disclaims an agency relationship, the agreement also provides that, "Dealer shall provide Warranty Service for any Product," and "shall abide by all Case IH policies and procedures contained in the DOG when performing Warranty Service and Other Required Service or when submitting Dealer Claims, including creating and retaining all supporting documentation for such claims." Id. §§ 10.1 and 10.1(f). Further, "[t]he performance and administration of the warranties so extended [in Case IH's Limited Warranty], and the reimbursement to Dealer for Warranty Service performed on Products, are as set forth herein and in the DOG in effect at the time warranty service is performed. The Parties shall promptly fulfill their respective warranty obligations as set forth in the Limited Warranty and DOG." Id. § 15.1. The Court is thus left to speculate whether, under the terms of the various agreements, a customer's notice to the dealer of a warranty claim to be serviced and administered by L&W also qualifies as notice to CNH.

Second, Pennsylvania law requires "reasonable" notice. 13 Pa. C.S. § 2607(c)(1). It is undisputed that CNH received direct notice of Bieda's claims related the missing Hydraulic Completing Kit in January 2019, approximately eight months before Bieda filed suit and eight

17

months after Bieda discovered the defect. Despite L&W's request that CNH deliver the Hydraulic Completing Kit for Bieda by June 4, 2018, CNH did not deliver the kit to L&W until at the earliest June 27, 2018, by which time Bieda's planting season was over. ECF No. 55 ¶ 19-21. Under these circumstances, the reasonableness of delayed notice is a fact issue for the jury, with the burden of proof placed on Bieda as the buyer. Vanalt Elec. Const. Inc. v. Selco Mfg. Corp., 233 F. App'x 105, 111-12 (3d Cir. May 8, 2007) (seller argued that five-month delay between delivery and notice of breach was unreasonable; however, this raised a fact issue for jury). At trial, "[b]ecause the issue is notice under Section 2607 rather than opportunity to cure, the relevant questions include when [seller] first received notice of a problem and whether that notice was given within a reasonable time after [buyer] discovered or should have discovered the problem." Id. Accordingly, CNH's Motion for Summary Judgment based on lack of notice is denied.

### 3. Consequential Damages

In its Reply Brief, CNH argues that Bieda is precluded from recovery of consequential damages by the terms of the warranty disclaimers in the relevant sales documents. ECF No. 64. As set forth in the Reply Brief, "CNH adopted [L&W's] argument in its motion for summary judgment on the preclusion of consequential damages. Plaintiff did not respond and, accordingly, has apparently conceded this issue." Id. at 6-7. Upon review of the motion, the full extent of CNH's "adoption" of L&W's consequential damages argument is set forth in a footnote in the Motion for Summary Judgment. ECF No. 64 at 3 n.2. In that footnote, CNH adopts L&W's argument as to the conspicuous nature of the L&W disclaimer of consequential damages and favorably compares the conspicuous nature of its own disclaimers. Id. The Court notes that Bieda resolved his claims with L&W two weeks after L&W filed its Motion for Summary Judgment and

over two weeks before his brief in opposition to L&W's Motion for Summary Judgment was due. ECF Nos. 51 and 61.

Under these circumstances, the Court is troubled that CNH fails to address the issue of consequential damages at all in its Brief in Support of Motion for Summary Judgment. Moreover, in its reply brief, CNH does not address procedural and substantive unconscionability arguments that may apply with equal force to the limitation on consequential damages. See 13 Pa. C.S. § 2719 ("Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable."). Accordingly, the Court declines to find that Bieda cannot recover consequential damages as a matter of law at this time.

**4. Negligent Misrepresentation**

In his Brief in Opposition to CNH's Motion for Summary Judgment, Bieda argues that the warranty disclaimers at issue are void because CNH, acting through its sales representative, negligently misrepresented the condition of the Planter by failing to disclose a known inherent defect or the need for additional parts. ECF No. 63 at 5-7. CNH responds that any evidence of prior misrepresentations or omissions is barred by the parol evidence rule and that any putative claim for negligent misrepresentation is otherwise barred by the applicable two-year statute of limitations. ECF No. 64 at 2-3.

The Court does not construe Bieda's argument in opposition to summary judgment as an attempt to set forth a new claim for negligent misrepresentation. The argument appears to relate to the unconscionability of CNH's warranty disclaimer. Of note, Bieda has not filed a motion to amend his complaint, nor addressed whether any new claim would relate back to his original complaint for purposes of the applicable statute of limitations. Toy v. Metro. Life Ins. Co., 863

A.2d 1, 9 (Pa. Super. 2004), *aff'd*, 928 A.2d 186 (Pa. 2007) (negligent misrepresentation subject to two-year statute of limitation).

Furthermore, the Court has concluded that summary judgment should be denied because CNH's disclaimer of implied warranty is procedurally and substantively unconscionable. Accordingly, the issue of whether the disclaimer is void due to negligent misrepresentation need not be addressed.

### IV.  CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment filed on behalf of CNH, ECF No. 58, is denied**.**  An appropriate Order will be entered.


Dated:  February 9, 2021                     */s/ Maureen P. Kelly*
                                             MAUREEN P. KELLY
                                             UNITED STATES MAGISTRATE JUDGE


cc:     All counsel of record by Notice of Electronic Filing